**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| DANNY FOSTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  2:17-cv-02001-CLS-JHE |
| | ) | |
| CORRECTIONAL LIEUTENANT | ) | |
| JENKINS, et al., | ) | |
| | ) | |
| Defendants. | | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

The plaintiff filed a *pro se* amended complaint pursuant to 42 U.S.C. § 1983, seeking monetary damages and injunctive relief for violations of his civil rights.  (Doc. 8).  The plaintiff names the following individuals as defendants in his amended complaint: Correctional Lieutenant Mohammad Jenkins, Correctional Officer Christopher Young, Correctional Sergeant Eddie Watts, Correctional Officer Roderick Gadson, Correctional Officer Gregoree Haywood, Correctional Officer Omar Parker, Correctional Lieutenant Lena Shepard, Warden Angela Miree, Classification Supervisor Lisa Bonner, Correctional Sergeant Samuel Aaron, and Correctional Officer Samuel Snelson.  (*Id.* at 2-5).  The plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.  (*Id.* at 7).  In accordance with the usual practices of this Court and 28 U.S.C. § 636(b)(1), the amended complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

**I. Procedural History**.

On August 20, 2018, the undersigned entered an Order for Special Report directing the Clerk to forward copies of the amended complaint to each of the named defendants and directing

the defendants to file a special report addressing the plaintiff's factual allegations. (Doc. 15).[1]  The undersigned advised the defendants that the special report could be submitted under oath or accompanied by affidavits and, if appropriate, the court would considered it as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (*Id.*).

On March 1, 2019, all defendants except Officer Snelson filed a joint special report, supplemented by affidavits and other evidence.  (Doc. 34).  Officer Snelson filed a separate answer and special report on March 20, 2019.  (Doc. 41).  The plaintiff filed an initial response to the special reports, including an affidavit, on March 25, 2019. (Doc. 45).  On April 24, 2019, the undersigned notified the parties that the court would construe the special reports as a motion for summary judgment and notified the plaintiff that he had twenty-one days to respond to the motion by filing affidavits or other material.  (Doc. 52).  The undersigned also advised the plaintiff of the consequences of any default or failure to comply with Federal Rule of Civil Procedure 56.  (*Id.*) (citing *Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985)).  The plaintiff filed responses, docketed as motions, on May 17, 2019. (Docs. 53 & 54).[2]  The defendants' special reports construed as motions for summary judgment are fully briefed and ripe for review.

## II. Standard of Review

Because the court has construed the defendants' special report as a motion for summary judgment, Fed. R. Civ. P. 56 governs the resolution of the motion.  Under Rule 56(a), summary

---

[1] On September 5, 2019, the Order for Special Report was amended to correct the name of the defendant identified as Correctional Officer Parks to Correctional Officer Parker. (Doc. 17).

[2] The plaintiff's "Motion to Incorporate Documents" (doc. 53) is **GRANTED** to the extent that the documents attached thereto may be submitted in response to summary judgment and are considered to the extent they are relevant and admissible.  Additionally, the plaintiff's "Motion to Preclude Summary Judgment" (doc. 54) is construed as a supplemental response in opposition to summary judgment.  The request for an evidentiary hearing contained in document 54 is **DENIED**.

judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party.  *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000).  The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues of material fact and that he is due to prevail as a matter of law.  *See Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991).  Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990).  As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case.  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted].  Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof.  This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532.

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment.  *See Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)).  Additionally, because the plaintiff is *pro se*, the court must construe the complaint more liberally than it would pleadings drafted by lawyers.  *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).  "*Pro se* pleading

are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).

### III. Summary Judgment Facts

The plaintiff is an inmate in the custody of the Alabama Department of Corrections and is presently housed at Ventress Correctional Facility in Clayton, Alabama. His amended complaint is based on events he alleges occurred at Donaldson Correctional Facility on December 6, 2015.  (Doc. 8).  On that date, the plaintiff was taken to the West Classification area to be questioned by Officer Jenkins regarding an incident between he and another inmate, Benjamin Rogers.  (Docs. 34-2, 34-4, 34-5, 34-11, and 45 at 4).  It is undisputed that Officers Jenkins, Young, Watts, and Gadson, as well as inmate Rogers, were present in the classification area during the events in question. (*Id.*).[3] From there, the parties' stories diverge. The plaintiff states that he remained cooperative and answered Jenkins' questions, but that Jenkins became "very aggressive" and instructed Haywood to leave the room as he "needed no witnesses." (Doc. 45 at 4).  As Haywood was exiting, the plaintiff also got up to leave, and Sergeant Watts pinned the plaintiff to the table and sprayed him in the face with mace. (*Id.*).  The plaintiff then complied with Watts' instructions to place his hands behind his back and was immediately handcuffed. (*Id.*).  While he was being cuffed, Officer Young hit the plaintiff in the face with a pair of handcuffs, and Officer Gadson then hit the plaintiff across the nose with his baton. (*Id.*).[4]  Officer Young then punched the plaintiff in the lip. (*Id.*).  The

---

[3] As noted, *infra*, the plaintiff also places Officer Haywood at the scene, but does not allege she took part in the assault. (Doc. 45 at 4).  He does allege Officer Haywood failed to intervene. (Doc. 8 at 8).  Officer Haywood claims to have no knowledge of the events. (Doc. 34-10).

[4] Medical records confirm the plaintiff suffered a six-centimeter laceration to his right brow that required a hospital visit and stiches, lower and upper lip swelling, a fracture of the right nasal bone, and a head contusion. (Docs. 34-20 & 34-22 at 1-15).  The record also contains photographs of the plaintiff's face that appear to show extensive and bloody injury. (Doc. 34-12 at 5).

plaintiff states that Watts looked on as the assault occurred. (Doc. 8 at 8). As the plaintiff was being escorted to the infirmary by Officer Jenkins, the plaintiff's head and face were repeatedly slammed into the wall. (*Id.*).  Officer Parker failed to intervene during these events. (*Id*)

The defendants contend the plaintiff was not being cooperative in the interview. The defendants further contend that Officer Jenkins instructed Officer Watts to escort the plaintiff back to the I&J Unit and, at that point, the plaintiff stood up from the table, reached into his pants and pulled out a homemade knife, and ran towards inmate Rogers. (Docs. 34-2, 34-4, 34-5, & 34-11). The plaintiff denies possessing a weapon of any kind. (Doc. 45 at 4).  According to defendants, Jenkins then sprayed the plaintiff with mace and Officers Gadson and Young wrestled the plaintiff to the floor. (*Id.*).  Other than Officer Parker, who arrived on the scene after the plaintiff had been restrained (doc. 34-7), none of the officers directly dispute the plaintiff's contention he was struck with handcuffs and a baton, and they make no effort to explain the apparent injuries indicated by the photos and the medical record.  Instead, the defendants state the plaintiff was "taken to the ground" (doc. 34-2), "subdued" (doc. 34-4), "grabbed from behind" (doc. 34-11), and "wrestled to the floor" (doc. 34-5).   Officer Jenkins denies slamming the plaintiff's face against the wall as he was escorting him to the infirmary. (Doc. 34-4).

## IV. Analysis

### A.  Excessive Force

The Eighth Amendment prohibits cruel and unusual punishment and prevents a prisoner from being subjected to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  When force is applied by prison officials, the Eighth Amendment inquiry must concentrate on whether the force was applied in a good faith effort to maintain discipline or was carried out maliciously or sadistically for the purpose of causing harm. *Id*. at 320.  In *Hudson v.*

*McMillian*, the Supreme Court set out factors for a court to considered when evaluating whether the use of force was wanton and unnecessary.  The factors include: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by the prison official; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the injury suffered by the inmate. *Hudson*, 503 U.S. 1, 7 (1992).

Applying these standards to the facts presented at summary judgment, genuine issues of material fact exist with respect to the plaintiff's Eighth Amendment excessive force claim against defendants Jenkins, Young, Watts, and Gadson, precluding summary judgment at this time.  The plaintiff's sworn complaint and subsequent affidavit set out specific and detailed facts surrounding the events that took place on December 6, 2015.  The plaintiff denies possessing a knife or lunging at inmate Rogers, denies doing anything to provoke the officers' assault, and denies resisting. (Doc. 53-1 at 7).  The plaintiff presents testimonial evidence he was attacked by the officers after being handcuffed behind his back, when he posed no threat to the officers. (*Id*.).  He further contends Jenkins repeatedly slammed his face against the wall for no reason during the walk to the infirmary. (Doc. 45 at 4).  The record establishes the plaintiff suffered serious injury. Therefore, construing the evidence in the plaintiff's favor as the law requires at this stage, there was no reasonable need for the application of force, much less to the extent administered.  It appears a reasonable jury could find that force was applied for reasons other than a good faith effort to maintain discipline.  The defendants' contention, that force was used only after the plaintiff attempted to attack another inmate, merely creates an issue of fact to be resolved at trial.  Accordingly, the motion for summary judgment asserted on behalf of defendants Jenkins, Young, Watts, and Gadson for claims of excessive force should be **DENIED**.

### B. Failure to Intervene

Prison guards may become directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence. *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998).  For this type of liability to attach, the officer must have actually been in a position to intervene. (*Id*. at 1407) (*citing Thompson v. Boggs*, 33 F.3d 847 (7th Cir. 1994).  Unless a guard has a "realistic opportunity" to prevent an attack, he cannot be held liable under § 1983 for failure to intervene.

In this instance, genuine issues of fact preclude summary judgment on behalf of Officers Haywood, Parker, and Watts.  Although denied by each, the plaintiff offers evidence that Officer Watts looked on as Jenkins, Young, and Gadson beat him, that Officer Haywood also failed to intervene, and that Officer Parker failed to intervene as Jenkins slammed his face into the wall. (Doc. 8 at 8). The conflicting testimony of the parties creates a disputed issue of fact and present a sufficiently genuine issue to preclude summary judgment on behalf Haywood, Parker, and Watts with respect to the plaintiff's failure to intervene claim.  As such, summary judgment should be **DENIED** on the plaintiff's failure to intervene claim against defendants Haywood, Parker, and Watts.

### C. Failure to Protect (Supervisory Defendants)

A different result should be reached on the plaintiff's failure to protect claim against defendants Shepard, Miree, Bonner, Aaron, and Snelson.  The vague language in the complaint makes it appear that these defendants, who hold supervisory roles, had prior knowledge of the danger the plaintiff faced by the Officers who allegedly beat him. (Doc. 8 at 8).  However, in his response to the special report, the plaintiff describes conversations with these defendants that occurred *after* the December 6, 2015 assault. (Doc. 45 at 5).   Although prison officials have a duty

to protect prisoners from violence, and supervisory personnel who are deliberately indifferent to a risk of harm to inmates by prison guards under their supervisory control can be held liable, it is axiomatic that supervisory personnel cannot be held liable for events that occur ***prior*** to being informed of the danger, unless "the risk was obvious and a reasonable prison official would have noticed it." *Farmer v. Brennan*, 511 U.S. 825, 833, 842 (1970).  Here, the plaintiff points to nothing in the record to indicate the danger he faced from the correctional officers should have been obvious to the supervisory defendants.

To the extent the plaintiff complains that the supervisory defendants ignored his requests to be transferred after the December 6, 2015 assault and that he continued to receive verbal threats from the officers, his complaint is without merit.  There is no evidence that the officers ever again physically accosted him, and his complaints of verbal harassment are not actionable. *See Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979); *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993); *Stacey v. Ford*, 554 F. Supp. 8 (N.D. Ga. 1982).  Threats of violence do not, alone, constitute a valid claim.  Where threats of violence do not result in physical contact or where threats are not carried out, a § 1983 claim based upon such threats is due to be dismissed, even where such threats are without apparent justification. *Hernandez v. Florida Department of Corrections*, 281 Fed. Appx. 862, 866 (11th Cir, June 9, 2008); *Simms v. Reiner*, 419 F. Supp. 468, 474 (N.D. Ill. 1976); *accord Bolden v. Mandel*, 385 F. Supp. 761, 764 (D. Md. 1974).   Accordingly, summary judgment is due to be **GRANTED** as to the plaintiff's failure to protect claims against defendants Shepard, Miree, Bonner, Aaron, and Snelson.

### V. Recommendation

For the reasons stated above, the undersigned **RECOMMENDS** the motion for summary judgment on behalf of defendants Jenkins, Young, Watts, Gadson, Haywood, and Parker be

8

**DENIED**.  It is further **RECOMMEMDED** that the motion for summary judgment on behalf of defendants Shepard, Miree, Bonner, Aaron, and Snelson be **GRANTED** and the claims against them be **DISMISSED WITH PREJUDICE**.

The undersigned **FURTHER RECOMMENDS** that the remaining excessive force and failure to intervene claims against defendants Jenkins, Young, Watts, Gadson, Haywood, and Parker be **REFERRED** to the undersigned for further proceedings.

### VI. Notice of Right to Object

Any party may file specific written objections to this report and recommendation.  A party must file any objections with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered.  Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting. Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address.  Objections should not contain new allegations, present additional evidence, or repeat legal arguments.  An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order.  In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice. 11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations.  The district

judge must conduct a hearing if required by law.  Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence.  Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record.  The district judge also may refer this action back to the undersigned with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  A party may only appeal from a final judgment entered by a district judge.

DONE this 17th day of January, 2020.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE